PEOPLE v HENDERSON

1. CRIMINAL LAW—RES GESTAE WITNESSES—INDORSEMENT—ACCOM-
   PLICES.

   A defendant cannot require the indorsement of one accomplice as
   a res gestae witness simply because the prosecutor has volun-
   tarily chosen to indorse another, because the prosecutor has no
   obligation to indorse an accomplice.

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OF-
   FENSES—ACCOMPLICES.

   The failure of the trial judge to specifically answer the jury's
   question as to why they were trying the defendant for armed
   robbery when his accomplice was already convicted of unarmed
   robbery was not error where the judge instructed the jury that
   their verdict should be based upon the evidence and prior
   instructions given, and where the conviction of the defendant's
   accomplice of a lesser offense was clearly the product of plea
   bargaining and was irrelevant to the defendant's conviction.

3. CRIMINAL LAW—CROSS-EXAMINATION—PROSECUTOR'S REMARKS—
   DISCRETION.

   The scope of cross-examination and control of trial proceedings
   fall within the trial judge's discretion; such discretion was not
   abused where the trial judge permitted the prosecutor to pre-
   face many of his questions to the defendant and a defense
   witness with the phrases "Isn't it true" or "Would you have the
   jury believe" where the diametrically opposed testimony of two
   witnesses, each an admitted participant in the charged crime,
   not only made credibility the key issue, but created an unusual
   situation in which one of the witnesses was obviously giving
   false testimony and thus justified the use of zealous and prob-
   ing cross-examination techniques.

4. CRIMINAL LAW—PROSECUTOR'S REMARKS—CROSS-EXAMINATION—
   CREDIBILITY.

   A prosecutor's intimation that a defendant and a defense witness

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 118.
[2] 21 Am Jur 2d, Criminal Law § 494.
[3, 4] 58 Am Jur, Witnesses §§ 664 *et seq.*

were committing perjury to cover up for the defendant did not deny defendant a fair and impartial trial where the challenged questions were neither illegitimate nor propounded in an inflammatory manner and where the prosecutor's questioning left the decision regarding the witnesses' credibility to the jury.

Appeal from St. Clair, Stanley C. Schlee, J. Submitted Division 2 December 7, 1972, at Lansing. (Docket No. 9673.) Decided May 22, 1973. Leave to appeal denied, 390 Mich 752.

William R. Henderson was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Walter W. Turton,* Prosecuting Attorney, and *Steven L. Hill,* Chief Appellate Attorney, for the people.

*Daniel S. Seikaly,* Assistant State Appellate Defender, for defendant.

Before: BRONSON, P. J., and R. B. BURNS and DANHOF, JJ.

BRONSON, P. J. After successfully appealing his first conviction, defendant seeks review of a conviction rendered upon retrial. On July 6, 1966, defendant was convicted by jury verdict of robbery armed in violation of MCLA 750.529; MSA 28.797. This conviction was affirmed in *People v Henderson,* 10 Mich App 333 (1968), and subsequently reversed by the Michigan Supreme Court. 382 Mich 582 (1969). Pursuant to the reversal and remand ordered by the Supreme Court, a new trial was conducted on February 17 through 19, 1970. At the conclusion of this retrial, defendant was again convicted for robbery armed.

From this conviction defendant appeals, raising three allegations of error: (1) did the trial judge

commit reversible error by denying defendant's motion to indorse an accomplice as a res gestae witness, (2) did the trial judge commit reversible error by improperly instructing the jury on the lesser offenses included in the charged crime, and (3) did the prosecutor deny defendant a fair trial by cross-examining defendant and an accomplice testifying for the defense in a prejudicial manner?

The facts establishing the actual commission of the robbery are not disputed and coincide with those set forth in this Court's previous opinion. Restated briefly, Gleeson Buzzard, an elderly attendant of a Tulsa gas station located in Port Huron, was robbed of approximately $50 by two young men on March 16, 1966. Since defendant was not identified as one of the assailants, the second trial, like its predecessor, attempted to establish defendant's participation in the crime by evidence that he drove the getaway car and accepted a portion of the proceeds. The prosecution offered the testimony of Donald Armstrong,[1] an admitted accomplice, for this purpose. This witness, age 16 when the robbery was committed, testified that defendant and one David Harris invited his participation in the robbery of the Tulsa gas station. Defendant gave him a dime to make a telephone call for purposes of distracting the attendant's attention and Harris obtained a rubber-headed hammer from the trunk of defendant's car. While defendant waited in the car, this witness accompanied Harris to the gas station. During his pretended telephone conversation, Harris struck the attendant twice with the hammer and took the money from his victim. The duo

---

[1] The prosecutor agreed to the nolle prosequi of the armed robbery charge against Donald Armstrong entered on November 30, 1966. This dismissal was contingent upon Donald Armstrong's entry into the military service, which he fulfilled.

returned to the car and defendant drove to his home where the "take" was divided three ways.

Unlike the first trial, David Harris testified for the defense.[2] This witness denied defendant's participation in the crime and related an entirely different story. He described borrowing defendant's car on the pretense of needing transportation to visit his son who was hospitalized in Warren, Michigan. After driving around he encountered Donald Armstrong, an acquaintance, and suggested they rob the Tulsa gas station. He described the actual performance of the robbery in conformity with Armstrong's testimony, but denied informing defendant of the robbery or sharing the money with him. Upon taking the stand defendant verified Harris' testimony that the car was borrowed and denied either knowledge of or participation in the robbery. At the conclusion of trial, the jury found the defendant guilty as charged.

Defendant's first allegation of error effectively challenges the prosecutor's failure to indorse David Harris as a res gestae witness. The prosecutor chose to indorse only the accomplice testifying for the people. Since defendant could secure Harris' favorable testimony only by offering him as a defense witness, defendant argued that prejudice resulted and filed a motion requesting the prosecution to indorse Harris. We find no error in the trial judge's denial of this motion and decline defendant's invitation to revise the currently recognized exception that the people need not indorse accomplices as res gestae witnesses. *People v Toneff,* 37 Mich App 221 (1971), and cases cited

---

[2] This witness was convicted for his participation in the transaction by a guilty plea to the lesser included offense of unarmed robbery. He stated that his testimony was withheld until the second trial because of a fear that his admission of guilt would prejudice his pending appeal.

therein; *People v Peck,* 39 Mich App 150 (1972). This argument is more properly addressed to our Supreme Court. Since the prosecutor has no legal obligation to indorse an accomplice, defendant cannot require the indorsement of one accomplice simply because the prosecutor has voluntarily chosen to indorse another. This choice and acceptance of the attendant burdens of making an accomplice a witness for the people by voluntary indorsement falls within the province of the prosecutor and will not be intruded upon by this Court.

Defendant further asserts that the trial judge improperly instructed the jury regarding the lesser offenses included in the crime charged. The trial judge instructed the jury that there were three possible verdicts: (1) guilty of armed robbery, (2) guilty of attempted armed robbery, or (3) not guilty. At the time these instructions were given defendant neither requested additional instructions nor challenged the instructions as given. The specific difficulty upon which defendant's claim is predicated occurred when the jury returned from deliberations to ask the trial judge a question; to-wit, "Why are we trying Mr. Henderson on armed robbery when Mr. Harris is already convicted on *[sic]* an unarmed robbery?" The trial judge responded with the following statement:

"I cannot answer to *[sic]* this question. Your verdict is to be based upon the evidence and the law given to you in my instructions to you."

Although this response failed to specifically answer the jury's question, it did not constitute an improper or misleading instruction requiring reversal. But see, *People v Jones,* 273 Mich 430 (1935); *People v Guillett,* 342 Mich 1 (1955); *People v Price,* 21 Mich App 694 (1970). Harris' conviction

for *unarmed* robbery was clearly the product of plea bargaining and was irrelevant to defendant's conviction. The trial judge's failure to describe this distinction was not misleading since the effect of his statement was to notify the jury that defendant's guilt or innocence should be decided in accordance with the submitted evidence and prior instructions given. A criticism that the trial judge's answer was incomplete is questionable since an attempt to distinguish between defendant and Harris may have resulted in more confusion. The trial judge was in a position to evaluate the degree of confusion and we will not substitute our judgment for his. In this context, the jury was neither inaccurately nor improperly instructed.

Defendant finally alleges that he was denied a fair trial by the prosecutor's prejudicial cross-examination of him and an accomplice testifying for the defense. This preserved challenge is directed toward the manner in which the examination was conducted and the intimation that their testimony was not credible. The prosecutor prefaced many of his questions to defendant and David Harris with phrases such as "Isn't it true" or "Would you have this jury believe". Our review of the record indicates that both the prosecutor and defense counsel were confronted with an extraordinary case. The issue of defendant's participation in the robbery depended exclusively upon the competing testimony of Donald Armstrong and David Harris, each an admitted participant in the charged crime. The diametrically opposed testimony of these witnesses not only made credibility the key issue, but created an unusual situation in which one of the witnesses was obviously giving false testimony. This situation justified the use of zealous and probing cross-examination techniques. These tech-

niques were similarly employed by defense counsel when cross-examining Donald Armstrong. The scope of cross-examination and control of the trial proceedings fall within the trial judge's discretion. *People v Taylor,* 386 Mich 204 (1971); *People v Green,* 34 Mich App 149 (1971); *People v Finch,* 37 Mich App 247 (1971); *People v Turner,* 41 Mich App 744 (1972). Upon the present record, we find no abuse of discretion.

This allegation is further based upon the prosecutor's intimation that defendant and Donald Harris were committing perjury. The prosecutor questioned Mr. Harris regarding a conspiracy with defendant to cover up for him. Similarly, the prosecutor questioned defendant regarding his friendship with Mr. Harris and the possible creation of their story within the last 48 hours. This Court has been sensitive to defendants' need for protection from improper references to their credibility and the credibility of witnesses testifying in their behalf. In *People v Montevecchio,* 32 Mich App 163 (1971), this Court found that the prosecutor's remark characterizing defendant's alibi witnesses as "booze-joint friends" who committed perjury to be inflammatory and prejudicial. See, also, *People v Tarpley,* 41 Mich App 227 (1972). The protection against improper references to the credibility of either defendant or defense witnesses applies whether the prejudice results from the prosecutor's closing arguments or cross-examination. In the present context, the prosecutor has not sought a conviction by innuendo or character assassination. Contrast, *People v McColor,* 36 Mich App 455, 463 (1971) (dissenting opinion by Judge, now Justice, Levin), *People v Ball,* 33 Mich App 288 (1971). The challenged questions were neither illegitimate nor propounded in an inflammatory

manner. The prosecutor's questioning appropriately left the decision regarding the witnesses' credibility to the jury.[3] The prosecutor's conduct upon the present facts did not deny defendant a fair and impartial trial.

Since defendant failed to establish a meritorious basis for reversal, defendant's conviction is affirmed.

Affirmed.

All concurred.

---

[3] *Contrast, People v Tarpley,* 41 Mich App 227 (1972) (where the prosecutor's numerous statements regarding defendant's lack of credibility effectively induced the jury to substitute his judgment for theirs).