*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* CADP, Minor.

UNPUBLISHED
February 22, 2024

Nos.  366087; 366088
Kalkaska Circuit Court
Family Division
LC Nos.  22-001067-AM;
            22-001066-AM

Before:  HOOD, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

These consolidated appeals involve three competing petitions for adoption of a minor child, CADP.  Yvonne Robinson; Jason and Daena Thibodeau; and David and Donna Prevo all sought consent to adopt CADP, and respondent, the Michigan Children's Institute (MCI), granted consent to Robinson and denied consent to the Thibodeaus and the Prevos.  The Thibodeaus and the Prevos (collectively: "petitioners") filed motions pursuant to MCL 710.45 ("§ 45 motions"), challenging the denials of consent, and these petitions were denied.  We vacate the trial court's order denying the petitions and remand for additional proceedings.

## I.  BACKGROUND

This is the second time that these petitions have been before this Court, and the prior appeal resulted in a published opinion reversing the trial court's decision on a discovery matter.  See *In re CADP*, 341 Mich App 370; 990 NW2d 386 (2022).  The facts underlying these petitions are set forth in this Court's prior opinion:

> The parents of CADP, who was born in 2018, are deceased.  [The Prevos] are the paternal grandparents who filed a petition seeking to adopt CADP.  [The Prevos'] daughter and son-in-law, Daena and Jason Thibodeau, also wished to adopt CADP, as did CADP's maternal grandmother, Yvonne Robinson . . . .  The Michigan Children's Institute (MCI) recommended Yvonne for the adoption.  [The Prevos] then filed a motion under MCL 710.45, alleging that MCI's decision to

withhold consent for petitioners to adopt CADP was arbitrary and capricious.[1] [*Id*. at 374-375.]

With respect to the first appeal, petitioners had sent subpoenas to DHHS and BCS seeking "[a]ny and all documents relating to CADP," but "the court concluded that petitioners were not entitled to discovery because the general discovery rules do not apply to § 45 proceedings; the information sought was confidential, in any event; and petitioners' subpoenas were overbroad." *Id*. at 376-377 (quotation marks and alteration omitted). This Court, however, agreed with petitioners that "the discovery rules apply to a § 45 hearing initiated by motion, their subpoenas were not overbroad, and the confidential nature of the information would have been adequately safeguarded by a protective order or in camera inspection while allowing for a meaningful § 45 review to occur." *Id*. at 378-379. Therefore, this Court reversed the trial court's orders denying discovery and quashing the subpoenas. *Id*. at 374, 396.

Following remand from this Court, the circuit court divided the case into three distinct case files: one for the Prevos, one for the Thibodeaus, and one for Robinson. The Thibodeaus and Prevos sought discovery of the entirety of CADP's case files, but despite this Court's previous order, BCS contended that it could only disclose those files related to the specific prospective adopter who sought discovery. The trial court adopted a narrow construction of this Court's opinion and reasoned that this Court did not deem the entirety of the files necessarily discoverable to each party. Therefore, the discovery requests were denied, and the § 45 hearings proceeded without petitioners ever getting access to the case files relating to Robinson. In its final orders, the trial court concluded that the MCI superintendent's decision to grant consent to Robinson and deny consent to the Thibodeaus and the Prevos was not arbitrary and capricious.

## II. DISCOVERY

Petitioners[2] argue that the trial court erred by only allowing the Prevos and Thibodeaus to access their own files. We agree.

---

[1] As explained in *In re Keast*, 278 Mich App 415, 423; 750 NW2d 643 (2008):

The MCI superintendent represents the state of Michigan as guardian of all children committed to the state by a family court after termination of parental rights. MCL 400.203. The superintendent is authorized to consent to the adoption of any child committed to the MCI as a state ward. MCL 400.209. Consent by the superintendent to the adoption of a state ward is required before the family court can approve a prospective adoption. MCL 710.43(1)(b). Under MCL 710.45(2), a person who has filed a petition to adopt a state ward and has not received consent from the MCI may file a motion in family court to challenge the MCI superintendent's denial of consent.

[2] This argument was raised both by the Thibodeaus in Docket No. 366087 and by the Prevos in Docket No. 366088.

This Court "review[s] a trial court's decision to grant or deny discovery for [an] abuse of discretion." *Mercy Mt Clemens Corp v Auto Club Ins Ass'n*, 219 Mich App 46, 50; 555 NW2d 871 (1996). To the extent this issue requires interpreting a statute, review is de novo. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 278; 831 NW2d 204 (2013).

The lower court ruled that neither the Prevos nor the Thibodeaus were entitled to discovery of adoption materials related to Robinson. This ruling violated the law-of-the-case doctrine because it was contrary to this Court's opinion in the prior appeal. As explained in *Rott v Rott*, 508 Mich 274, 286-287; 972 NW2d 789 (2021):

> The law-of-the-case doctrine is a judicially created, self-imposed restraint designed to promote consistency throughout the life of a lawsuit. The idea is that if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same. Thus, as a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals. The purpose of the doctrine is primarily to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. [Quotation marks and citations omitted.]

In other words, the lower court was barred from making any rulings contrary to this Court's decision in the prior appeal.

When it decided *In re CADP*, 341 Mich App at 386, this Court made the following statements:

> Petitioners [i.e., the Prevos] sought the case files relating to CADP, *which is relevant evidence under MCR 2.302(B)(1) for the purpose of determining whether MCI's decision to withhold consent to adopt the minor child was arbitrary and capricious*. In other words, the reasons supporting MCI's decision to withhold consent may be determined to be invalid if, for example, the information relied upon was inaccurate, the child's circumstances were not properly considered, or certain facts were not considered. Any such evidence may only be obtained through appropriate discovery, and specific objections to requested discovery information may be addressed by the trial court, including through a motion for a protective order under MCR 2.302(C) or a request for an in camera review. *Because it is petitioners' burden in a § 45 hearing to establish "by clear and convincing evidence that the decision to withhold consent was arbitrary and capricious," MCL 710.45(7), petitioners must be afforded the means to attempt to carry that burden.* [Emphasis added.]

This passage indicates that this Court has already concluded that the "case files" were relevant. Moreover, this Court cited with approval an unpublished opinion in which the petitioner, who had been denied consent to adopt, was allowed to review the entire MCI file. See *In re CADP*, 341 Mich App at 384-385, citing *In re COH, ERH, JRG, & KBH (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued December 4, 2014 (Docket Nos. 309161 and 312691).

The Court particularly emphasized the statement that "Michigan is strongly committed to a far-reaching and open discovery practice." *Id*. at 385, quoting *In re COH*, upub op at 9.

The lower court also reasoned that neither the Prevos nor the Thibodeaus were entitled to the information pertaining to Robinson in light of footnote 8 in *In re CADP*. But a close reading of *In re CADP* makes it clear that that footnote was dealing solely with information obtained during the child-protection portion of the proceedings, and it is undisputed that neither the Prevos nor the Thibodeaus are seeking any information relating to those particular proceedings. The *In re CADP* Court discussed MCL 722.627 and noted that it deals with cases of abuse and neglect. *In re CADP*, 341 Mich App at 393-395. MCL 722.627 provided,[3] at the pertinent time:

> (2) Unless made public as specified information released under section 7d, a written report, document, or photograph filed with the department as provided in this act is a confidential record available only to 1 or more of the following:
>
> * * *
>
> (g) A court for the purposes of determining the suitability of a person as a guardian of a minor or that otherwise determines that the information is necessary to decide an issue before the court, or in the event of a child's death, a court that had jurisdiction over that child under section 2(b) of chapter XIIA of the probate code of 1939, 1939 PA 288, MCL 712A.2.
>
> * * *
>
> (k) A child placing agency licensed under 1973 PA 116, MCL 722.111 to 722.128, for the purpose of investigating an applicant for adoption, a foster care applicant or licensee or an employee of a foster care applicant or licensee, an adult member of an applicant's or licensee's household, or other persons in a foster care or adoptive home who are directly responsible for the care and welfare of children, to determine suitability of a home for adoption or foster care. The child placing agency shall disclose the information to a foster care applicant or licensee under 1973 PA 116, MCL 722.111 to 722.128, or to an applicant for adoption.

In the prior appeal, this Court stated that the act referred to was the Child Protection Law (CPL), MCL 722.621 *et seq*., and it concluded that the lower court could preclude from discovery information pertaining to abuse and neglect. *In re CADP*, 341 Mich App at 395. This Court stated:

> But petitioners have explicitly stated the following:
>
>> There was only a one month period of time from when the court took jurisdiction over [CADP] and when his mother died, and to the extent any of the case file contained information relating to

---

[3] There has since been a renumbering and a minor rewording of this statute. See 2022 PA 68.

the abuse and neglect case against her, that information could have been excluded and still can be.

In other words, petitioners agree that information pertaining to abuse and neglect can be excluded from discovery. While petitioners did not explicitly state this in their motion for discovery, the court, in exercising its discretion, could have recognized this limitation on otherwise allowable discovery. [*Id.* at 395 (alteration and footnote omitted).]

This Court, *in connection with this ruling*, added footnote 8, which provides:

The parties also cite MCL 722.627(2)(k), which speaks to a child-placing agency's provision of information obtained from DHHS to "an applicant for adoption." BCS is a child-placing agency. . . . [and] it seems that the information to be provided by the agency to the applicant for adoption is the information *pertaining to that applicant*. Petitioners noted below that BCS had, indeed, agreed to provide records pertaining specifically to petitioners. [*In re CADP*, 341 Mich App at 395 n 8.]

When read in context, it is clear that this Court ruled that any information *from the abuse-and-neglect case*—not information from the adoption case as whole—and pertaining to an applicant for adoption was to be provided only to that applicant. It is not this Court's role to usurp the ruling of *In re CADP*. "Even if the prior decision was erroneous, that alone is insufficient to avoid application of the law of the case doctrine."[4] *Duncan v Michigan*, 300 Mich App 176, 189; 832 NW2d 761 (2013). The lower court's discovery ruling on remand contradicted the rulings of *In re CADP*.

Because the trial court did not allow discovery into the information pertaining to Robinson, the Thibodeaus and the Prevos were not "afforded the means to attempt to carry [their] burden" to establish that MCI's decision to withhold consent to adopt CADP was arbitrary and capricious. Therefore, we vacate the court's order denying these petitions, and remand this case for additional proceedings. On remand, the court shall allow the Thibodeaus and Prevos to conduct full discovery into CADP's case files, including those pertaining to Robinson. The court shall then conduct the § 45 hearings anew, and shall consider all evidence relevant to CADP's welfare, rather than limiting the presentation of evidence to that pertaining to the particular petitioner. Because we vacate the court's orders on these grounds, we decline to address petitioners' arguments pertaining to the court's ultimate conclusion that MCI's decision was not arbitrary and capricious.[5]

---

[4] We are not indicating that the ruling in *In re CADP* was erroneous but are merely stating that even if it was, it must be applied.

[5] Petitioners and amici also raise arguments relating to the trial court's statements suggesting that its decision hinges on whether MCI had "any good reason" to grant consent to Robinson. However, this standard is firmly established by Michigan caselaw. See *In re TEM*, 343 Mich App 171, 179; 996 NW2d 850 (2022) ("Michigan authority is clear that the court is to determine if there

## III. PARTICIPATION OF BCS

Petitioners[6] argue that the trial court erred by allowing BCS, a nonparty, to participate in the § 45 hearing. We agree.

"Whether due process has been afforded is a constitutional issue that is reviewed de novo." *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013).

MCL 710.24a(1) delineates the interested parties in an adoption petition, and it provides:

Interested parties in a petition for adoption are all of the following:

(a) The petitioner or petitioners.

(b) The adoptee, if over 14 years of age.

(c) A minor parent, adult parent, or surviving parent of an adoptee, unless 1 or more of the following apply:

(*i*) The rights of the parent have been terminated by a court of competent jurisdiction.

(*ii*) A guardian of the adoptee, with specific authority to consent to adoption, has been appointed.

(*iii*) A guardian of the parent, with specific authority to consent to adoption, has been appointed.

(*iv*) The rights of the parent have been released.

(*v*) The parent has consented to the granting of the petition.

---

is any good reason to support the MCI Superintendent's decision; if so, the decision must be upheld."). In this instance, we are also bound by the law of the case. See *CADP*, 341 Mich App at 380 ("Regarding the withholding of consent to adopt, it is the absence of any good reason to withhold consent, rather than the presence of good reasons to grant it, that indicates that the decision maker has acted arbitrarily and capriciously." (Quotation marks, citation, and alteration omitted.)).

[6] This argument was raised both by the Thibodeaus in Docket No. 366087 and by the Prevos in Docket No. 366088.

(d) The department or a child placing agency to which the adoptee has been, or for purposes of subsection (3) is proposed to be, released or committed by an order of the court.

(e) A parent, guardian, or guardian ad litem of an unemancipated minor parent of the adoptee.

(f) The court with permanent custody of the adoptee.

(g) A court with continuing jurisdiction over the adoptee.

(h) A child placing agency of another state or country that has authority to consent to adoption.

(i) The guardian or guardian ad litem of an interested party.[7]

It is undisputed that BCS does not qualify as an interested party under any of these designations; indeed, representatives of BCS repeatedly referred to BCS as a nonparty in the trial court. Despite being a nonparty, attorneys for BCS actively participated in the § 45 hearing and even raised objections. The participation went far beyond the scope of the limited appearances filed by the BCS attorneys, pursuant to MCR 2.117(B)(2)(c), to tend to discovery matters.

In *People v Henderson*, 382 Mich 582, 585-586; 171 NW2d 436 (1969), the Michigan Supreme Court discussed the role of attorneys for those who are not parties to the litigation:

A witness to a lawsuit has a perfect right to hire his own lawyer, and have him attend the trial as a spectator. He has a right to the advice of his counsellor before taking the stand, or during any recess. In a proper case, the court in its discretion might grant a recess for that very purpose.

But if an attorney does not represent one of the parties to the litigation, there is no basis for him to participate as an advocate before the bar.

If he objects, and his objection is sustained erroneously, against whom is the error committed? Against whom is the appeal to be taken? If his objection be overruled erroneously, can the error be saved to the witness? Surely witnesses have no right of appeal.

A decision to object or not object is often a matter of trial strategy. On whose doorstep is that strategy to be laid?

The notion of permitting witnesses' attorneys to participate in *civil trials* or in criminal trials generally is *so inconsistent with our adversary system as to*

---

[7] While not pertinent to this case, when an Indian child is at issue, "the Indian child's tribe have a right to intervene at any point" during the proceeding. MCL 712B.7(6).

*constitute a denial of due process of law*, to an objecting party.  [Emphasis added, footnote omitted.]

The application of *Henderson* to the facts before us is simple.  BCS was not a party to this litigation.  Therefore, attorneys for BCS had no right to participate in the § 45 hearings.  See *id*.  Despite this fact and over petitioners' objections, attorneys for BCS actively participated in the hearing to an extent suggesting that BCS actually was a party.  Allowing this to happen was "so inconsistent with our adversary system as to constitute a denial of due process of law" to petitioners.  *Id*.  Therefore, on remand, the trial court shall not allow BCS's attorneys to participate beyond the scope of their limited appearances for the purposes of discovery.

## IV.  DISQUALIFICATION

The Prevos argue that the trial court erred by denying their motion for a recusal.  We disagree.

Both parties moved to disqualify the trial court in October 2022.  After a hearing, the trial court denied the motion on the basis that it was untimely, and even if it wasn't, there was no basis for establishing judicial bias.  On de novo review, the Chief Judge agreed, issuing a thorough opinion as to why the motion was both untimely and without merit.  We review this decision for an abuse of discretion, which "occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008).

It is clear that both the trial court and Chief Judge of that court were right:  the joint motion to disqualify was untimely—*by years*.  MCR 2.003(D)(1)(a) provides that "all motions for disqualification must be filed within 14 days of the discovery of the grounds for disqualification. If the discovery is made within 14 days of the trial date, the motion must be made forthwith." When seeking disqualification, the Prevos relied upon three pieces of evidence: (1) certain comments made on the record by the trial court in child protection proceedings that occurred in 2019; (2) a case note from the present case in which a BCS worker stated that the trial judge had made it evident in the autumn of 2019 that Donna Prevo was inappropriate for placement of CADP, and (3) information from an MCI employee, who stated on January 28, 2021, that the judge "has a strong opinion of Prevo grandparents," "has made it clear she doesn't like Prevos from removal," and "[h]as a favorable view of [Robinson]."  As both trial courts recognized, the Prevos had the transcripts containing the comments *years* before the filing of the motion for disqualification on October 12, 2022, and the Prevos themselves acknowledge that they learned of the case note in "mid-August 2022."  Although the Prevos apparently only learned of the MCI employee comment on September 30, 2022, bringing it within the 14-day deadline, this comment appears to be a summation of the earlier comments of which the parties were already aware.  That the trial court mentioned, during a hearing on October 7, 2022, the mere possibility that a party might suggest grounds for disqualification existed did not "reset" the period for filing the motion for disqualification.

Even if the motion was timely, it was meritless.  It is well established that "judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment

impossible and overcomes a heavy presumption of judicial impartiality." *Armstrong v Ypsilanti Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001) (quotation marks and citation omitted); see also *Bayati v Bayati*, 264 Mich App 595, 603; 691 NW2d 812 (2004). Indeed, "[r]epeated rulings against a litigant, even if erroneous, are not grounds for disqualification. The court must form an opinion as to the merits of the matters before it. This opinion, whether pro or con, cannot constitute bias or prejudice." *Band v Livonia Assoc*, 176 Mich App 95, 118; 439 NW2d 285 (1989), citing *Mahlen Land Corp v Kurtz*, 355 Mich 340, 350; 94 NW2d 888 (1959). This Court presumes that the trial judge is impartial and the party asserting otherwise bears a heavy burden to overcome that presumption. *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009).

Here, the only comments actually made by the trial court—the 2019 comments—were made in the context of deciding a placement issue in the child protection proceedings. Importantly, the comments were not from extraneous sources but instead were made by the presiding judge on the basis of what had been observed by the court, or at minimum reported to it, during the proceedings. These relevant, on-the-record comments do not constitute evidence of improper bias. See *In re MKK*, 286 Mich App at 566-567 (a trial judge's remarks, which are hostile to or critical of the parties, their cases, or their counsel, ordinarily will not establish a disqualifying bias). Indeed, the trial court was performing its proper function when making the comments, the comments were relevant to those prior proceedings, and the court expressly stated that it had no bias against any of the parties.

The law on disqualification is clear, and its faithful application leads to the dual conclusions that the motion was untimely and contained no proper basis to remove the trial court.

## V. CONCLUSION

We vacate the trial court's order denying the Thibodeaus' and Prevos' petitions to set aside MCI's denial of consent to adopt CADP. This case is remanded for additional proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado